And Mr. Theophilopoulos is here for the appellants. Mr. Forsythe for the appellee. And Mr. Theophilopoulos, you may begin when you're ready. Good morning, Your Honors. May it please the Court, Counsel. This case revolves around the DPPA, the Driver License Protection Privacy Act. And the District Court did a generalized analysis and erred with regards to whether lobbying is a government function under their structure at the Orange County Sheriff's Department. And why do I say they erred? They ignored the fact that one of the appellees, Mr. McMahon, who worked for the Orange County Sheriff's Department was reprimanded for his behavior in this exact case. The case revolves around a bill, Senate Bill 234. Counsel, I read the portion of Mr. McMahon's disciplinary slip. And I frankly don't see where he was reprimanded for the substance. He was disciplined for not being aware of the law. He was disciplined for other things that he did and for not properly performing his duties, not being aware of the internal operation of the department. I can't find where he was disciplined for the conduct that we're looking at in this case. Well, the fact that he was disciplined for not being aware of the policy and procedure that's in effect dealt with the fact that we have driver license photos, which are both protected under the DPPA and as well as under Florida Statute 790, or excuse me, under Chapter 119 of the Sunshine Law in Florida. So the fact that he presented the driver license photos to Captain Fulis and was unaware at that time is his contention that he was not allowed to do that. And he was disciplined for being unaware. Not that he was not allowed to do it, but he was disciplined for not being aware that they were considered confidential or the DPPA about the DPPA. He was disciplined for not being aware of the law. Which goes hand in hand with the conduct that occurred in this case. Had this conduct not occurred, were my three appellant's photographs from their driver license unsuspected were delivered and presented to the Senate Judiciary Committee in Tallahassee, including some of the aides of the Senate Judiciary Committee. Had that not been improper, he wouldn't have been disciplined at all, is our argument. This case comes down to there is no nexus whatsoever to using both or all three of the appellant's photographs from their driver's licenses in order to put a different picture, a different face. The statute, this government function exception to the Driver's Privacy Protection Act is mighty broad. It's very broadly written. It allows the use of this personal information. It's used by any government agency, including any law enforcement agency, in carrying out its functions, period. And I would agree with Your Honor that it is very broad. Where this, I'm sorry. So, where do you draw the line? Where do we draw the line? The governor, or excuse me, the appellees cited to the Downing v. Globe direct LLC case, say First Circuit case 2012. In that case, it talks about the Pilcher case, which is Pilcher v. United, 542F3-380. It's a 2008 Third Circuit case. And the language that is cited in that Downing case from Pilcher is this. The DPPA contains no language that would excuse an impermissible use merely because it was executed in conjunction with a permissible purpose. You have permissible purpose versus permissible purpose. Isn't lobbying a function of a sheriff's office? A sheriff's office can lobby. In fact, that's what this guy's job was, to lobby the Florida legislature. That's his job. It is. Lobbying is a function, Your Honor. We concede that. It's a law enforcement function. In this case, it is. There was an individual who was dedicated, Captain Fulis, to conducting those actions. Where it steps over the line, and I'm asking for a narrow holding here because it is a broad issue. Where it steps over the line is when you use people's pictures, driver license, they are termed highly sensitive under this federal law. Highly sensitive meaning social security numbers, photographs, medical, and social security number. And that's why they should have been more careful here. They can go up before the Florida legislature all day long and talk about you're going to have bikers that look mean. They're going to be carrying guns. But once you present the photographs, you've breached the DPPA. Not only that, in Florida we have under Chapter 790 the concealed weapons permit statute where you're not permitted to disclose individuals who have those permits. And what they did here by doing this is disclose those photographs, which in essence ended up disclosing their identities because the media picked up on it. And it was all over. It was on the newspaper. It's in the record. And it was on the news. And all three of the clients were identified. So there has to be some sort of restriction on how far they can go. And again, permissible purpose, we have lobbying here. But the permissible use is what is missing here. It was completely improper to divulge. These three individuals had nothing whatsoever to do with this bill other than two of them had concealed weapon permits at the time. In fact, Mr. Doyle Napier, whose picture was used, his driver license picture, before the committee, he was a convicted felon. He wasn't even allowed to carry a gun, yet it was presented that people like him would be carrying guns outside no longer concealed if this bill were to pass. Law enforcement is entrusted with public safety function. Yet they were up there politicizing an issue with regards to open carry. They've conceded in their own statements that this was not a safety issue for their department. This was an image issue that they did not want gentlemen who perhaps live a different lifestyle than we do. They dress differently. They look differently. They didn't want them having concealed, or excuse me, open carry guns in tourist areas such as Orlando. Counsel, when I read that argument, one thing I thought was, well, isn't helping people feel safe and secure one of the functions of law enforcement? It is. But how is it that an individual who is not a criminal, who has a right to legally carry a gun concealed, because they've gone through the process with the state of Florida and they've stamped them as being eligible to carry, how is it more safe that just because that individual is carrying hidden when it is on the outside, how does that make the public more safe? This was a strict image issue. This was something that perhaps the Chamber of Commerce for Orange County should have gone up there and argued. And I agree with your honor, that sure, image is something when it comes to safety. But why use three unsuspecting individuals' driver license photographs that have no nexus whatsoever to this bill? Zero. They didn't even know this was going on when it went down. Why use their pictures to embarrass them? If we were talking about race, would that issue be different? Would we look at it different? I believe we would. Did they put the pictures in the Orlando Sentinel? I don't believe the pictures, but the names I believe were published, your honor. So the only people who saw the pictures were members of the Florida legislature? And some of the aides. When it was distributed, that is correct. That is correct. And again, my argument is, is it a permissible purpose? Lobbying, yes. But they overstepped their boundaries by releasing highly sensitive information that the federal government has deemed. Thank you. Thank you, counsel. We'll hear from Mr. Forsyth. Good morning. May it please the court. My name is Ian Forsyth, and I represent the appellees in this case, Mr. McMahon and Mr. Fulis. They were both employed by the Orange County Sheriff's Office at the time of the incidents in this case. Your honor, this case involves, as you know, the Driver's Privacy Protection Act. And the plaintiff's appellant's argument is that my clients violated that act. It is our position that their actions, quick background, Captain Fulis was in Tallahassee at the time, lobbying the Florida legislature, specifically the Judiciary Committee for the Senate. And Mr. McMahon was back in Orlando working at the Sheriff's Office, and he was the one who sent the pictures by email up to Captain Fulis. It is our position that both of them did not violate the statute because they were engaged in a lobbying function. And as counsel has conceded, lobbying function is a permissible, excuse me, it is a function of the law enforcement agency, in this case, the Orange County Sheriff's Office. And I cited law to that effect in my brief, and counsel has conceded the point. But can you cross the line with the use of these photographs? I mean, do they have license, do these officers have license to use photographs on driver's licenses in any way? Well, your honor, when you say in any way, I'm not sure. I suppose there could be some situation that's not before the court. I don't know the answer to that. Yeah, why shouldn't the jury decide whether or not they cross the line in this case, rather than the judge decide that they cross the line? Your honor, the answer is because under the material facts presented in this case and the application of law to the facts in this case, there presents no material issue that a jury can decide. In other words, under the facts of this case, they were engaged in a legitimate government function. They used driver's license photos. And within the permissible use exception, they met that exception. And it is clear on its… How you use the photos, it could be proper or it could be improper. That's an issue of fact, right? Your honor, ultimately, yes. But district courts are charged with reviewing issues of fact and finding whether or not the issue is material or not for purposes of presenting it to a jury. That is the function of the Rule 56 summary judgment rule. And I would submit under the facts of this case, as we have in front of us, that the issue of… That's what this judge said, but I might disagree with the judge. Yes, your honor, you may. If I were on the jury, I might disagree. You may, your honor. But it's my position under the facts of this case that, as you pointed out earlier with counsel, the government function exception written by Congress is broad. Well, if it's so broad, would it include this hypothetical? Let's say these two officers, in an effort to influence the Florida legislature, took these driver's license photographs and instead took them up to Tallahassee. They put them on billboards all over the state. So if you're driving down the interstate, you see these guys' pictures on the billboards with a caption, call your legislator and tell them to vote against this statute. Because if it passes, these guys are going to be able to carry their weapons openly. And their pictures are on the billboards. Would that be a violation of the Driver's Protection Act? Your honor, that's an interesting question. I would ask for more time to consider it. But my first reaction would be it may cross the line. Because now you're putting billboards where members of the public can see it openly and people who know these people may see them and recognize them. And that's a whole different fact pattern compared to what we have here. So I would concede your point that that may cross the line. But my response to your honor would be that's not the facts of this case. Under the facts of this case, Captain Fuel has presented it to members of the Florida Judiciary Committee. Someone might say there's not that much of a difference between the two. I'm sorry, your honor? A reasonable person might decide that, well, there's not that much of a difference between what happened here and my hypothetical. I mean, this was covered in the Orlando Sentinel, wasn't it? Your honor, the photos were not published in Orlando Sentinel. There was an article with no photos. And I would add in this particular case, photos were handed to members of the Florida Judiciary Committee and their staff members. I want to make this clear. It wasn't presented in a public hearing. It was presented in their chambers. Private may not be the right word, but it was not a public hearing is my point. And no identifying information other than their photos was provided. No names, no addresses, nothing else other than photos. And the plaintiff's appellants and the photos went all around the legislature, so everybody can see them. That's not, I'm sorry, your honor, that's not in the record. The only thing in the record is it was presented to members of the Florida Judiciary Committee and their staff in their office. And it was never presented in a public hearing. That's the record that we have in front of us. Doesn't the Florida legislature make a legislative record of what was performed? So somebody has to decide whether they did something correctly or incorrectly or how to interpret what the eventual statute that came out means. Here's the legislative record to help us. So anybody could have gotten the legislative record. Your honor, I honestly don't know the answer to that question. It's not in the record whether or not these photos became made a part of the legislative record. I don't know the answer to that, but I can say it's not in the record. And I can only tell you what I know from the record, which is they were handed to members of the Senate Judiciary Committee in their chambers or in their offices, and in some cases to their aides. Beyond that, we have a record of the hearing in which Captain Fulis made certain comments in the hearing, and there's no record in the hearing that he presented them in the hearing. That's the record. Should the phrase governmental function be broadly or narrowly interpreted? I believe it should be broadly interpreted. And there's case law, which I cited, that says when a word is used by Congress but not otherwise defined, you use the common, ordinary meaning of the word, and that's the canon of statutory construction, which your honors are very well aware of. And under the normal and ordinary meaning of the word, function means the activity appropriate to the nature or position of a person or a thing. And I would argue that if you're lobbying the legislature and you present information directly to them, that is a function that is appropriate to the nature of a thing. And I would argue that under the wording that Congress provided, this meets that function. But the exception is not without limits, at least according to the Seventh Circuit, who said that there was a violation when a law enforcement agency left a parking citation containing private information exposed to the public, a parking citation. That seems less egregious than what we have here. But yet the Seventh Circuit found that that was a violation of the act that did not fall within the government function exception. If this case was in the Seventh Circuit, you'd lose, wouldn't you? Your honor, certainly reasonable minds can disagree on different fact patterns and whether or not the Seventh Circuit would agree. That's why the case ought to go to the jury. Your honor, reasonable minds can differ on different fact patterns, but ultimately if a fact pattern presents facts that are not material enough to warrant a jury trial and use of judicial resources for purposes of a trial, then that's the purposes of a summary judgment. And if this court agrees that the lower court properly applied their judgment to say that the facts were not material enough to move forward to a jury, then this decision should be affirmed. And ultimately it comes down to your decision one way or the other, and that's what we're here for. Did you get a jury trial in a case like this? If summary judgment is denied, do you get a jury trial? My general recollection is yes, but I would have to research that issue, your honor. All right. And I would point one case I cited in my brief, which is McWhorter v. City of Montgomery, I believe in Alabama. That was a middle district case in Alabama. And briefly in that case, the law enforcement agency in Alabama did a prostitution sting and they showed a photo of a person in their press release of someone who was allegedly involved in a prostitution sting. That person then sued, claiming their photo was used improperly in violation of the DPPA, and the district court in Alabama said, no, that's a government function. They were doing law enforcement purpose, and therefore there was no violation. I recognize it's a district court opinion and not a circuit court opinion, but that, I believe, is an example that your honor would say that that's another fact pattern that certainly if they use someone's photo in publication to the public, that that goes more broadly, as you said earlier, and that was found to be a permissible use in that particular case. Another thing I would point out to the court based on the facts of this case is the plaintiffs did not know that this happened until four months later when an article came out in the Orlando Sentinel in August. This happened back in April. They didn't know about it at all. I asked them in their depositions, which is in the record, how were you damaged? I asked them if they knew about it. They said, no, not until the Orlando Sentinel article. I asked them, were you damaged in any way? I said, were you embarrassed? They said, not initially because I didn't know about it, but later when I found out about it, I felt embarrassed. They had no other damages. I would argue that all the facts of this case point to the fact that under the facts of this case, the photos without names, without other identifying information, were provided to the Florida Senate Judiciary Committee members, not in an open public hearing but in their offices, and no other disclosure was made. And this, I believe, falls more in the less public, less egregious side, more than the public egregious side that Your Honor pointed out in the billboard example. And I believe under the facts of this case, it fits within the broad permissible use set by Congress. None of these guys whose photographs were exposed, they had ever been convicted of a crime, right? I believe one was a felon is my general memory and two others were not. Which one was a felon? I don't recall off the top of my head, Your Honor, which one it was. All right. Thank you, Your Honor. Thank you. Mr. Forsythe, we'll hear again from Mr. Villafelopoulos. Thank you. Thank you. Doyle Napier was a convicted felon. He did not have a concealed weapons permit. Yet his picture was utilized before the Senate Judiciary Committee, saying people like him would be caring when, in fact, that wasn't true. The word functions is ambiguous when it comes to this law. And when you look at the congressional record, 139 Congressional Record S. 115-763-1993, it states, in enacting the DPPA, Congress intended to strike a critical balance between legitimate governmental and business needs for this information and the fundamental right of our people to privacy and safety. The right to privacy outweighs whatever legitimate governmental lobbying they claim here because that was not legitimate. One, it was an outright lie before the committee that Doyle Napier and his picture could carry a weapon. He was a convicted felon. The other two unsuspecting law-abiding citizens who had concealed weapons, they were exactly that, unsuspecting, no nexus to this, and law-abiding. The McWhorter case, which is a district court case that counsel for the appellee spoke about, apples and oranges. The McWhorter case involved an individual who was arrested on a prostitution sting. She gave the name of one of her best friends, even had her date of birth. Then they pulled her driver license picture because there was a problem taking the booking photo. And as part of a press release, they would, in order to bring the public up to speed, publish the names and the photographs. That is apples and oranges what occurred here. The line was crossed, Your Honor, and it was underhanded in the manner it was done. The record shows that the members of the Senate Judiciary Committee in Florida, in fact, received those photographs, each one of them, and some of their aides. That is what is in the record. Was it distributed to the public? No, it was not. But there is no Senate Judiciary Committee exception to releasing these photographs to them. It's not permitted. Again, we have balancing the private interests of the three appellants versus this law enforcement function. If we allow this today, tomorrow it will be doctors, lawyers, and judges' pictures, perhaps, and there's nothing anybody can do about that. I want to leave you with this. Counsel for the appellees says that none of these people suffered any harm. That's not the case. Tracy Osteen was a member of our military. He was a Marine, and this is in the record. He has PTSD because of his service. He was in Beirut, Lebanon, 1983. In his own barrack, 241 members of his barrack were killed in a bombing. What did he testify to that's in the record? He sweated for several nights, and he moved to North Carolina because of the attention that was brought to him. And that is wrong. And I'm asking this court to right this wrong, to put some parameters here. Thank you very much. Thank you, Counsel.